**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

| | | |
|---|---|---|
| **BILLY CHARLES AARON** | * | |
| **ADC #110649,** | * | |
| | * | |
| **Plaintiff** | * | |
| | * | |
| v. | * | Case No. 1:02CV00103JLH/JFF |
| | * | |
| **NOLEN,** *et al.,* | * | |
| | * | |
| **Defendants** | * | |

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**I**.      **INSTRUCTIONS**

The following recommended disposition has been sent to United States Chief District Judge Leon Holmes.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

    1.     Why the record made before the Magistrate Judge is inadequate.

>    2.  Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.
>
>    3.  The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

>   Clerk, United States District Court
>   Eastern District of Arkansas
>   600 West Capitol Avenue, Suite 402
>   Little Rock, AR 72201-3325

**II.   DISPOSITION**

   **A.   Background**

Plaintiff, an inmate confined to the Arkansas Department of Correction, filed this action on December 6, 2002 asserting a retaliatory discipline claim and due process violations stemming from a major disciplinary that was issued by Defendant Major Nolen charging that Plaintiff forged the signatures of three officers on four separate property inventory forms.[1]

---

[1] Upon Defendants' Motion to Dismiss, Plaintiff's claims against Warden Maples, Larry Norris, Larry May and Robert Clark for not properly investigating his allegations in his disciplinary appeal or his grievances in order to correct the injustice done to him were found to be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), as a direct attack upon the validity of the disciplinary conviction (docket entries 35-36). At the Motion to Dismiss stage, the Court found that Defendants Lloyd and Nolen had not satisfied the "some evidence" standard which allows a defendant to defeat a retaliatory discipline claim if they can show "some evidence" that the disciplinary action taken was for the inmate's actual violation of prison rules. The only documentary evidence before the Court at that point was the Disciplinary Action form signed by

Plaintiff seeks compensatory and punitive damages and 15 years of good time.

On September 28, 2005, Plaintiff and Defendant Nolen appeared before the undersigned for a hearing for the limited purposes of: (1) exploring the factual basis for Plaintiff's claims; and (2) determining whether those claims should proceed to a jury trial. The hearing was conducted pursuant to the standard of review set forth in *Johnson v. Bi-State Justice Center*, 12 F.3d 133 (8th Cir. 1993).[2] Under that standard, all testimony from Plaintiff is accepted as true and viewed in the light most favorable to him, no credibility determinations are made, and the Court determines only "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Johnson*, 12 F.3d at 135 (*citing Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986)).

**B. Summary of the Testimony and Evidence**

During the time period relevant to this suit, Plaintiff was confined at the Scott Grimes Unit of the Arkansas Department of Correction.

Defendant Nolen has been employed by the Arkansas Department of Correction for almost 18 years. He has held the rank of Major for the past fourteen years. In his position he is in charge of institutional security at the Scott Grimes Unit.

---

Ms. Lloyd that was submitted by Plaintiff with his Complaint. As set forth herein, the Defendants met the "some evidence" standard at the pre-jury hearing by presenting additional documentary evidence that supported Lloyd's disciplinary decision.

[2]Defense counsel initially represented that Ms. Lloyd and Mr. Nolen would be present for the hearing. Defense counsel notified the Court the day before the hearing that Ms. Lloyd would not be present and was scheduled for a medical appointment. At the hearing, Plaintiff stated that he expected Ms. Lloyd to attend the hearing, and he wanted to question her. Although the record could have been left open and the hearing reconvened for the purpose of taking testimony from Ms. Lloyd, the undersigned found no basis for such action given the limited scope of the pre-jury hearing.

On April 6, 2002, Plaintiff was taken for "pre-lock up" and confined in administrative segregation upon a disciplinary issued by Sergeant Mansker and Officer Combs charging Plaintiff with various violations for fighting with another inmate [Def. Ex. 1].[3] ADC policy 94-15 dated May 18, 1994 governs inmate property control.[4]

Thereafter, Plaintiff submitted internal grievance GR02-0855 stating that Sgt. Mansker let an "unassigned" inmate in one barracks who broke into his box and stole items of his personal property while he was at work on April 6, 2002.[5] The grievance further states that when he was taken for pre-lock up for administrative segregation later that day after the fight, he was told by an inmate porter that someone got in his property box and another inmate was allowed to pack his property and additional property was taken. The Warden turned over the grievance to Major

---

[3]The copy of Mansker's disciplinary given to the Court as an exhibit is not signed and is not dated. However, Plaintiff testified that he recalled the events that resulted in the disciplinary and being taken for a pre-sentence lock-up to the infirmary. In addition, in the Complaint he filed with the Claims Commission he states that he was taken for pre-lock up on April 6, 2002. Thus, there is no dispute as to the date of the events that formed bases of Mansker's disciplinary.

[4]Plaintiff has given seeming inconsistent information to the Court about the events surrounding the property inventory that was taken when he was taken to administrative segregation on April 6, 2002 following the fight. In the Complaint that Plaintiff submitted to the Claims Commission [Def. Ex. 2], Plaintiff stated that Officer Bumpous inventoried his property between the hours of 7:00 p.m. and 10:00 p.m., and "all of the items listed on my inmate property were present and accounted for prior to me going to segregation." In grievance GU02-0855, Plaintiff stated that he was told by an inmate porter that another inmate was allowed to pack his property. The only way these two statements work together is if it is assumed that Plaintiff was present for the property inventory with Bumpous, but was not present when his property was packed on April 6, 2002.

[5]Confusion arises because Plaintiff states in GR02-0855 that these events occurred on April 16, 2002 whereas in his Claims Commission Complaint he states the same events occurred on April 6, 2002. GR02-0855 reflects that it was accepted by an ADC official on April 6, 2002 and was received by the unit grievance office on April 8, 2002. In addition, no one has represented that a property form from April 16, 2002 exists. Thus, it is likely that Plaintiff simply included an erroneous date in GR02-0855.

Nolen on April 30, 2002, for investigation. [Def. Ex. 2]. [6]

Plaintiff was placed on punitive status for thirty days and was taken to punitive isolation on April 19, 2002.[7]

Upon his release from segregated confinement on May 13, 2002, Plaintiff testified that not all of his property was returned to him. Plaintiff submitted grievance GR02-1270[8] stating that COI Sumler returned his property to him on May 13, 2002, and he noticed that various items were missing. The grievance is dated May 13, 2002 and bears a received date of May 22, 2002. Plaintiff filled out a Statement of Witness form dated May 13, 2002, listing the property that he states that he did not receive back. A note on the bottom of Plaintiff's statement bears the

---

[6] The Deputy Director found the grievance appeal to have no merit on June 30, 2002. The appeal was found to be without merit based upon Mansker's statement that he did not allow an unassigned inmate into the barracks to steal Plaintiff's property, and that to Mansker's knowledge Plaintiff got into a fight with another inmate and accused the inmate of stealing his property.

[7] It is not clear why Plaintiff was given punitive isolation time, although it likely could have been given as punishment on a guilty verdict from the disciplinary issued on April 6, 2002 by Sgt. Mansker. Resolution of this issue is not material to the outcome of the case.

[8] In GR02-0855, Plaintiff complains of property being stolen on two different occasions on April 6, 2002: (1) when Mansker let an unassigned inmate into his barracks while Plaintiff was at work and (2) when his property was packed after he was sent for pre-lock up for fighting with another inmate later that day. GR02-1270 involves a claim of missing property separate and distinct from the property that was missing on April 6, 2002, because it relates to property that became missing sometime during the time that Plaintiff was held in punitive isolation. GR02-0855 was referred to Nolen for investigation by the Warden on April 30, 2002. In response to GR02-1270, the Warden stated, "your grievance was responded to 4-30-02 on GR02-0855 . . . When Major Nolen is finished with the investigation you will be notified." It appears to the undersigned that the Warden mistakenly assumed that GR02-1270 was a grievance that duplicated that claim raised in GR02-0855, when in actuality the grievances complain about separate instances of lost property. However, in investigating GR02-0855 and the missing property of April 6, 2002, it would be logical for Nolen to have uncovered the inventory dated April 19, 2002.

signature of COI Sumler that states "inmate claims these items as missing." The Deputy Director declined to address the merits of grievance GR02-1270, stating that final disposition would determined by the State Claims Commission based upon the Complaint filed by the Plaintiff on May 27, 2002 seeking the value of his missing personal property. [Def. Ex. 2 and Pltf. Comp. Ex. 1].

Plaintiff submitted grievance GR02-1239 on May 16, 2002 alleging that an inmate approached him and told him that Major Nolen had other inmates lie and state that Plaintiff forged the signatures of officers Vandeman and Caldwell on property forms so that Plaintiff would be locked up and placed under investigation. [Def. Ex. 3].  Plaintiff testified that Nolen's inmate clerk gave him the information that formed the basis of the grievance.[9]

Plaintiff testified that Vandeman and others approached him on several occasions and asked him to report to Major Nolen's office.  Plaintiff referred to one occasion as having occurred after he filed his "small claims" suit and on another occasion he was being held in the "hole" and was told by Vandeman he would not get out unless he went and spoke with Nolen.

In grievance GR02-1279 [Def. Ex. 4], Plaintiff states that he was forced into Major Nolen's office on May 22, 2002, concerning a previous grievance he had written on Nolen, presumably grievance GR02-1239 [Def. Ex. 3] dated May 16, 2002.  GR02-1279 is dated May 23, 2002 and bears a received mark from the Grimes Unit of May 24, 2002.  The grievance states that Nolen is not charged with investigating inmate grievances, and he cannot investigate grievances in which he is a named party, and that Nolen told him that unless he signed a wavier

---

[9]The Warden's response states that the matter has been turned over to Internal Affairs. The Deputy Director's decision states that a final decision will come from the state Claims Commission given that Plaintiff had filed a Complaint.

Nolen would ensure that something would happen to Plaintiff.

At the hearing, Plaintiff testified that on an unspecified date when he presented in Nolen's office, Nolen realized the grievance concerned him, and he instructed Plaintiff that he could leave.

Plaintiff submitted grievance GR02-1432 stating that he was called to Nolen's office on June 10, 2002, and Nolen asked him why he had put "attorney affairs" on him and filed a grievance on him. In this grievance, Plaintiff alleges that Nolen stated that he would be issued a disciplinary tomorrow to teach Plaintiff not to mess with him, that he had gotten officers to lie about the property forms, he instructed the disciplinary hearing officer to bust Plaintiff, and he would ensure Plaintiff spent time in the hole even if he had to set him up. The grievance is dated June 10, 2002 and bears a received mark of June 12, 2002. [Def. Ex. 5].

Nolen testified that he is on occasion asked by the Warden to examine inmate grievances. Nolen testified that he was requested by Warden Maples to investigate Plaintiff's complaint of missing property. His general procedure when investigating inmate complaints is to first call the complaining inmate in to ask about the problem. He will then speak to other individuals if necessary, and upon completion of the investigations, report his findings to the Warden. Acting upon the referral from the Warden to investigate Nolen's allegation of missing property, Nolen testified that he obtained verbal and written statements from the officers whose names appeared on property inventory forms taken from Plaintiff's possession stating that the signatures on the forms were not authentic.

On June 11, 2002, Plaintiff was issued a Major Disciplinary by Major Nolen for violation of Rule 9-9, Counterfeiting, Forging or Unauthorized Possession of any document, article of

identification, money, security or official paper.  The disciplinary states that on May 22, 2003, Nolen began an investigation into Plaintiff's allegation of missing property, and discovered that Plaintiff had copies of four different inventories.  After speaking with the officers whose names appeared on the property forms, each officer advised Nolen that they did not do the inventory or did not recall the inventory, and the signatures on the inventories that were in Plaintiff's possession were not authentic. [Def. Ex. 6].

The Disciplinary Hearing Action form reflects that hearing officer June Lloyd found Plaintiff guilty on June 13, 2002 of the charged infraction based upon Nolen's charging statement and the four photocopied property forms and the witness statements from officers Vandeman, Bumpous and Caldwell stating that the signatures were not authentic.  Plaintiff was reduced to Class IV, confined in punitive isolation for 30 days, and lost good time credit  [Def. Ex. 6].

Plaintiff filed grievance GR02-1450 stating that Ms. Lloyd told him that he would not beat the disciplinary because Major Nolen told her to bust him, and that would be the only resolution given that he filed a lawsuit on the Grimes Unit for missing property. [Pltf. Ex. 1]. Nolen testified that could not recall whether or not he spoke with Ms. Lloyd on the date of the hearing.

Plaintiff testified that Lloyd stopped the tapes during the hearing to call central office and Major Nolen to inquire what she should do.  The Court admitted the tape from the disciplinary hearing into evidence [Def. Ex. 8].  On the tape, Ms. Lloyd stated that she called Central Office, but she did not elaborate further.  Plaintiff testified before the undersigned that he was denied the opportunity at the disciplinary hearing to present grievances as evidence to support his claim that the discipline issued for retaliatory purposes.  However, the tape reflects that Ms. Lloyd did

accept the copy of the grievance dated June 10, 2002 that he tendered to her at the hearing.  He testified that although he was allowed to make a statement on his behalf at the disciplinary hearing, he believed that Ms. Lloyd was not "taking in" what he said, and she seemed to be "ignoring" everything.

While he was held in segregated confinement, Plaintiff stated that he did not have access to certain things, including the property forms he is alleged to have forged.[10]

### III.    LAW and ANALYSIS

A prisoner has a cause of action when the prisoner alleges that prison officials filed disciplinary charges based upon false allegations against the prisoner in retaliation for the prisoner's participation in protected conduct. *See Goff v. Burton*, 7 F.3d 734, 738 (8th Cir.1993); *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir.1989) (filing retaliatory disciplinary proceedings against prisoner who filed a grievance against prison officials is actionable under 42 U.S.C. § 1983 because such retaliation interferes with prisoner's access to grievance procedure).  The Eighth Circuit has held that a Plaintiff must at least allege sufficient facts upon which a retaliatory animus can be inferred, and speculative or conclusory allegations are insufficient.

---

[10]The Defendants submitted exhibit 7, a memo from Deputy Director May addressed to Plaintiff dated September 9, 2002, that Plaintiff testified he has never seen.  The memo references grievance GR02-0868 as well as several attachments to the memo which have not been provided to the Court.  In the memo, May recounts a response that May requested from Warden Maples concerning Plaintiff's allegation of missing property.  May cites Maples as reporting that Plaintiff's personal property records do not reflect the amount of property he is claiming, that GR02-0868 was referred to Major Nolen for investigation and then to Internal Affairs for their assessment, and the conclusion was that Plaintiff forged the officers' signatures on the property forms.  It is not material that Plaintiff has never seen defense exhibit 7, that the defense did not submit into the record GR02-0868 or the attachments to their exhibit 7 because the "some evidence" standard with which the Court is concerned focuses solely upon the evidence that the disciplinary hearing officer relied upon in making the disciplinary determination.

*Atkinson v. Bohn,* 91 F.3d 1127, 1129 (8th Cir. 1996) (plaintiff's retaliation claim failed because he did not allege that defendants were involved in or affected by his previous litigation).

A retaliatory-discipline claim may be successfully defended if the defense shows "some evidence" that the inmate actually committed the rule violation. *See Earnest v. Courtney*, 64 F.3d 365, 367 (8th Cir.1995) (*per curiam*) (retaliation claim is precluded if punishment was imposed based on actual violation of prison rules); *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir.1994) (prison disciplinary committee's finding, based on corrections officer's description of events, that prisoner actually violated prison regulations precluded prisoner's retaliation claim). Thus, "no claim can be stated when the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to perform." *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir.1990). The critical inquiry "is not whether the prisoner alleges that prison officials retaliated against him for participating in constitutionally protected activity, but instead is whether the prison disciplinary committee ultimately found based upon some evidence that the prisoner committed the charged violation of the prison regulations." *Henderson*, 29 F.3d at 469. The some evidence standard is satisfied if there is any evidence to support the board's conclusion. *See Superintendent v. Hill*, 472 U.S. 445, 453-55 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* (emphasis added).

Upon initial review, the facts of this case seem convoluted, at times contradictory and in some instances appear to raise more questions and concerns than answers. Despite any initial

hesitation, a deliberate and thorough review of the factual sequence of events reveals the pertinent facts that mandate failure of Plaintiff's retaliation claim. Plaintiff has alleged that Nolen retaliated against him because Plaintiff filed a grievance concerning Nolen. The first grievance that Plaintiff filed involving Nolen is labeled GR02-1239[11] signed by Plaintiff on May 16, 2002 with a received date by the Grimes Unit of May 17, 2002. In the grievance, Plaintiff asserts that an inmate reported to him that Nolen had inmates lie and state that the Plaintiff filled out the property forms and forged the signatures of Bumpous, Caldwell and Vandeman. Before Plaintiff filed GR02-1239, Officer Bumpous produced two statements on May 14, 2002 in which he stated that his signature reflected on two of the property forms were not authentic, and Caldwell and Vandeman produced similar statements disavowing the signatures as their own in statements produced on May 15, 2002. The officers' statements formed the basis of the disciplinary for forgery that Nolen issued to the Plaintiff. Thus, *Plaintiff's retaliation claim hinges on the assumption that Nolen induced Bumpous, Vandeman and Caldwell to produce false statements stating that the signatures that appear on the property forms are not authentic.*[12]

---

[11]Plaintiff did file two grievances prior to filing grievance GR02-1239:
  (1) in grievance GR02-0855, Plaintiff asserted that officer Mansker let an unassigned inmate into his barracks who stole some of his property while Plaintiff was at work and later that day when Plaintiff was taken to pre-seg (presumably after the fight on April 6, 2002 in which Plaintiff was involved) another inmate was allowed to pack his property and more of his property was stolen.
  (2) in grievance GR02-1270 dated May 13, 2002 bearing a unit receipt date of May 22, 2002, Plaintiff alleges that not all of his personal property was returned to him when he was released from isolation May 13, 2002.
  While GR02-02-0855 was referred to Nolen for investigation, the substance of GR02-0855 and GR02-1270 do not raise issues that implicate or involve Nolen which would serve to support a retaliatory animus.

[12]Plaintiff has never asserted that Nolen filled out the property forms and also forged the signatures of Vandeman, Caldwell and Bumpous. Indeed, this would be inconsistent with the

The undersigned was left to determine whether Nolen had a motive to retaliate against the Plaintiff, and induce the officers' to issue false statements on or before May 15, 2002. Based upon the facts, it is clear that Nolen did not. The grievance that forms the basis of the retaliation claim, GR02-1239, in which Plaintiff implicated Nolen was not filled out by the Plaintiff until May 16, 2002, and the Complaint for his Claim Commission suit was not signed by the Plaintiff until May 27, 2002. Thus, Nolen's motive for retaliation did not arise until, at the earliest, May 16, 2002.[13] Thus, Nolen would have had no motive to induce Officers Bumpous, Vandeman, and Caldwell to produce false statements concerning the authenticity of their signatures on May 14 and May 15, 2002.[14]

---

position taken by Plaintiff concerning his missing property. Plaintiff has maintained that some of his property was taken on April 6, 2002, and not all of his property was returned to him when he was released from isolation on May 13, 2002. In support his assertion, he is forced into advancing that the (forged) property forms are an accurate inventory of his property taken by Bumpous on April 6, 2002 before he was taken to administrative segregation and by Caldwell and Vandeman on April 19, 2002 before he was taken to isolation. It would be wholly inconsistent for the Plaintiff to assert that the property forms are authentic in support of his missing property claim and at the same time disavow the same property forms and argue they were forged by Nolen in effort to "frame" the Plaintiff for the forgery disciplinary charge.

[13]Although not necessary to resolve the legal issues presented in this case, it would be logical to presume that Nolen did not have notice of GR02-1239 on May 16, 2002, the date that it was signed by the Plaintiff, because the grievance was not received by the unit until the following day, May 17, 2002.

[14] Given the limited scope of a pre-jury hearing, the undersigned did not allow Plaintiff to call Vandeman, Caldwell and Bumpous as witnesses at the hearing. Plaintiff represented in his pre-trial filings that these individuals would demonstrate that the "defendants lied." Given Nolen had no motive to retaliate against Plaintiff before Bumpous, Caldwell and Vandeman produced their statements, the undersigned is further convinced that their testimony could not have aided Plaintiff's cause. In addition, as set forth herein, the relevant inquiry is whether the hearing officer had "some evidence" to support the disciplinary decision. Even if these officers would have recanted before the undersigned at the pre-jury hearing and testified that the property forms were authentic, the fact remains that Lloyd had only their statements (and not a recantation) before her at the time she made the disciplinary decision.

In addition, Nolen's charging statement coupled with the statements from Vandeman, Bumpous and Caldwell constitute "some evidence" of a rule violation supporting Defendant Lloyd's decision on the disciplinary, notwithstanding Plaintiff's testimony that he was told by Lloyd off the record before the hearing that she had been instructed to bust the Plaintiff, and he casts suspicion on her call to ADC Central Office during the hearing. *Henderson v. Baird*, 29 F.3d 464 (8th Cir. 1994) (inmate's retaliation claim against charging officer failed because charging officer's description of the events constituted some evidence of the charged rule violation for assault upon the charging officer); *Brown v. Frey,* 807 F.2d 1407 (8th Cir. 1986) (written statements of officers implicating inmate in riot supported the some evidence standard); *Rudd v. Sargent*, 866 F.2d 260 (8th Cir. 1989) (statements from inmate victim in charging officer's written disciplinary report constituted some evidence of the charged violation for sexual assault even though the officer did not witness the violation and the inmate victim's statements as recited in the report might be considered inadmissible hearsay at a criminal trial); *Cf. Moore v. Plaster*, 266 F.3d 928 (8th Cir. 2001) (conclusory internal investigative reports containing only accusations unsupported by underlying facts were insufficient to support disciplinary action taken against prisoner for trafficking narcotics in retaliatory discipline case).  Plaintiff has stated that Vandeman, Bumpous and Caldwell would show that "defendants lied," but he has offered no specific factual basis for the undersigned to discredit their written statements which supported Lloyd's disciplinary decision, and to do so would require the undersigned to conduct an independent credibility assessment and to weigh the evidence – a function that is clearly discouraged by *Hill*.  Thus, the undersigned recommends that Plaintiff's retaliatory discipline claim be dismissed.

When a prison disciplinary may result in the loss of good time credits, an inmate is entitled to certain procedural protections. *Wolff v. McDonnell*, 418 U.S. 539 (1974) (Due Process requires that inmate be given written notice of the charges, the opportunity for a hearing before an impartial tribunal, with a limited right to call witnesses and present documentary evidence, and a written statement of the reasons for the hearing officer's decision). Plaintiff contends that he could not defend himself adequately at the disciplinary hearing because Nolen did not state in the disciplinary the location and the date of the infraction. While Nolen could have listed in the disciplinary the date and location that the property forms were *found* in Plaintiff's possession, there is no basis for believing that Nolen could have determined when and where the infraction occurred. Certainly, Plaintiff would not have forged the property forms in view of ADC officials or even other inmates. As a side note, this information would be essentially factually irrelevant to the defense that Plaintiff has asserted that he did not have an opportunity to forge property forms because he was not allowed to possess certain items, like property forms, while he was held in segregated confinement. Even if the location and date that the property forms were taken from Plaintiff's possession were required to be listed by ADC policy in the disciplinary, a violation of the prison's policy would not translate into a federal constitutional violation. *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir.1996) (Due Process Clause does not federalize state-law procedural requirements).

As to Plaintiff's related equal protection claim, it must fail as his allegations and testimony did not involve different treatment of similarly situated inmates. *Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003) (elements of equal protection claim).

IT IS THEREFORE RECOMMENDED that the Court decline to exercise jurisdiction over the supplemental state law claim for defamation, and that Judgment be entered on behalf of Defendants Nolen and Lloyd and Plaintiff's Complaint be dismissed with prejudice.

DATED this 10th day of November, 2005.

_____
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT